Filed 3/27/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CHASE AARON ARMSTRONG,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>Respondent;<br><br>THE PEOPLE et al.,<br><br>Real Parties in Interest. | H053298<br>(Santa Clara County<br>Super. Ct. Nos. C2409748 &<br>C2416888) |

Penal Code section 1000.7[1] authorizes three counties, including Santa Clara County, to operate a deferred entry of judgment pilot program for eligible defendants who are young adults. (*Id.*, subd. (a).) The statute sets out eligibility criteria for deferred entry of judgment participation, including that the defendant was at least 18 years old but under age 21 when the offense was committed, the defendant is "suitable for the program after evaluation using a risk assessment tool," and the defendant "[s]hows the ability to benefit from services generally reserved for delinquents . . . ." (*Id.*, subd. (b)(1)-(3).)

The County of Santa Clara Probation Department (hereafter probation department) determined petitioner Chase Aaron Armstrong did not meet the statutory criteria for this program because he does not reside in Santa Clara County. The trial court accepted probation's determination, indicating that under section 1000.7, it had no discretion to do

---

[1] Unspecified statutory references are to the Penal Code.

anything other than deny deferred entry of judgment. Armstrong petitions this court for a writ of mandate, prohibition, or alternative relief, arguing: (1) section 1000.7 should be interpreted to grant the trial court rather than the probation department the authority to make the criteria determination; (2) the statute violates the constitutional separation of powers provision if it authorizes the probation department to determine if deferred entry of judgment program criteria are met; and (3) the court abused its discretion in accepting probation's decision, as the determination denying him entry to the program was arbitrary.

We conclude section 1000.7 authorizes the probation department to determine if deferred entry of judgment criteria are met, the statute does not violate the separation of powers doctrine, and the trial court did not abuse its discretion in accepting the probation department's determination that Armstrong did not meet the statutory criteria. We therefore will deny Armstrong's petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Armstrong with offenses in two cases. In case No. C2409748, the prosecution charged Armstrong with two counts of vandalism causing $400 or more in damage (§ 594, subd. (a)). In case No. C2416888, the prosecution charged Armstrong with one count of vehicle theft (Veh. Code, § 10851, subd. (a)). The latter complaint alleged an enhancement that Armstong was out of custody on supervised own recognizance when he committed the offense (§ 12022.1, subd. (b)). This complaint also included a notification that the prosecution reviewed its files and was satisfied Armstrong met the requirements for deferred entry of judgment under section 1000.7.

The trial court referred Armstrong to the county probation department for a section 1000.7 deferred entry of judgment interview. The probation department responded with a letter stating Armstrong "was found unsuitable" for the program. The probation department cited the fact that Armstrong was a resident of Alameda County in concluding Armstrong was "unsuitable" for deferred entry of judgment "based on his inability to benefit from supervision services . . . or be seen to standard, due to his residency." Although the

2

version of section 1000.7 in effect at the time of Armstrong's deferred entry of judgment proceedings authorized Alameda County to operate a young adult deferred entry of judgment program (§ 1000.7, subd. (a)(1), as amended by Stats. 2024, ch. 80, § 103), Alameda County did not operate such a program at the time.[2]

The trial court conducted a hearing on this matter. The prosecutor stated he had been "hopeful" the probation department would find Armstrong suitable for the program, as Armstrong "seems like an appropriate young man for the benefits of that program." Armstrong's counsel argued nothing in section 1000.7 prohibits a person who resides out of the county from participating in the program, and noted language in section 1000.7 that the probation department determines if criteria to participate in the program are satisfied. Armstong's counsel asserted "maybe there needs to be a legislative fix," arguing that finding Armstrong could not participate in the program solely based on his county of residence reflects neither "the statute nor the spirit of the statute."

The trial court noted the parties' agreement that "the suitability determination is in the hands of the Probation Department," stating, "any change in that[] is going to require an order and opinion from the appellate court." The court stated the probation department's determination was not based on Armstrong's residency per se but rather based on the determination that "because of his Alameda County residency, he cannot be seen to standard." The trial court then continued the cases to proceed on the charges because of the probation department's determination.[3]

---

[2] The current version of the statute does not authorize Alameda County to operate a young adult deferred entry of judgment program.

[3] The trial court did not expressly deny deferred entry of judgment. It stated that it "considered" the probation department's determination that Armstrong did not meet the statutory criteria for deferred entry of judgment, and it continued both cases to discuss "a means of dealing with [them] absent or outside of the realm of" young adult deferred entry of judgment. We construe the trial court's acceptance of the probation department's determination as an order denying deferred entry of judgment.

Armstrong petitioned this court for a writ of mandate, prohibition, or alternative relief. This court issued an order to show cause why a peremptory writ should not issue. The probation department as real party in interest filed a return, asserting that section 1000.7 does not violate the separation of powers doctrine and that the probation department acted within its discretion in limiting participation to young adults physically present in Santa Clara County. Armstong replied, asserting that under section 1000.7 the probation department does not have unfettered authority to make deferred entry of judgment determinations, that a reading of the statute providing the department with this authority violates the separation of powers doctrine, and that the court abused its discretion by accepting the probation department's determination.[4]

## II. DISCUSSION

### A. *Section 1000.7*

In 2016, the Legislature enacted Senate Bill No. 1004 (2016-2017 Reg. Sess.) to "authorize specified counties to establish a pilot program to operate a deferred entry of judgment pilot program for eligible defendants." (Stats. 2016, ch. 865.) The measure authorized a defendant to participate in such a pilot program if he or she was charged with certain felony offenses and pleaded guilty, and if "the probation department determines that the person meets specified requirements, including that the defendant is 18 years of age or older, but under 21 years of age on the date the offense was committed, is suitable for the

---

[4] The People are also named as real party in interest in this case. After the probation department filed its preliminary opposition, the Santa Clara County District Attorney's Office submitted a letter to this court stating as follows: "While the People are the plaintiff in the underlying criminal court action, it is our position that the Probation Department, represented by the County Counsel of Santa Clara County, is the properly named real party in interest with respect to the issues presented. To the extent this Court desires the People to state a position in the matter, the People concur with the County Counsel that Penal Code section 1000.7 authorizes the Probation Department to make controlling eligibility determinations. The People further concur with the County Counsel that the Legislature's decision to so vest Probation with this authority does not violate the Separation of Powers Doctrine."

program, and shows the ability to benefit from services generally reserved for delinquents." (*Ibid.*) This measure authorized pilot programs until January 1, 2020, for five counties including Santa Clara. (*Ibid.*) Subsequent measures extended the sunset date and modified the counties permitted to establish a pilot program, with the current version in effect until January 1, 2029, and covering three counties including Santa Clara. (§ 1000.7, subds. (a), (o).)

Section 1000.7 states "[a] defendant may participate in a deferred entry of judgment pilot program within the county's juvenile hall if that person is charged with committing a felony offense [other than certain listed offenses], pleads guilty to the charge or charges, and the probation department determines" the defendant meets all of six requirements. (*Id.*, subd. (b).) First, the person must be "18 years of age or older, but under 21 years of age, on the date the offense was committed," though older defendants may also participate with permission. (*Id.*, subd. (b)(1).) Second, the probation department must determine the defendant "[i]s suitable for the program after evaluation using a risk assessment tool, as described in subdivision (c)." (*Id.*, subd. (b)(2).) Third, the probation department must determine the defendant "[s]hows the ability to benefit from services generally reserved for delinquents, including, but not limited to, cognitive behavioral therapy, other mental health services, and age-appropriate educational, vocational, and supervision services, that are currently deployed under the jurisdiction of the juvenile court." (*Id.*, subd. (b)(3).) Fourth, the person must "[m]eet[] the rules of the juvenile hall developed in accordance with the applicable regulations set forth in Title 15 of the California Code of Regulations." (*Id.*, subd. (b)(4).) Fifth, the person must not have a prior or current conviction for committing certain listed offenses. (*Id.*, subd. (b)(5).) Finally, the defendant must not be required to register as a sex offender. (*Id.*, subd. (b)(6).)

Under section 1000.7, "[i]f the probation department determines that the defendant is ineligible for the deferred entry of judgment pilot program or the defendant does not consent to participate in the program, the proceedings shall continue as in any other case." (*Id.*,

5

subd. (f)(1).)  The statute specifies five possible roles for the trial court in the deferred entry of judgment process.  First, the probation department must consult with the superior court, the district attorney, and the sheriff to develop an evaluation process using a risk assessment tool to determine suitability for the program, the second subdivision (b) requirement listed above.  (§ 1000.7, subds. (b)(2), (c).)  Second, "[t]he court shall grant deferred entry of judgment if an eligible defendant consents to participate in the program, waives the right to a speedy trial or a speedy preliminary hearing, pleads guilty to the charge or charges, and waives time for the pronouncement of judgment."  (*Id.*, subd. (e).)  Third, if the probation department moves for entry of judgment because it believes the defendant is performing unsatisfactorily in the program or the defendant is not benefiting from program services, "the court shall hold a hearing to determine whether judgment should be entered" and if the court agrees with the probation department, the court shall render a finding of guilt, enter judgment, and proceed to sentencing.  (*Id.*, subd. (f)(2).)  Fourth, "[i]f the defendant has performed satisfactorily during the period in which deferred entry of judgment was granted, at the end of that period, the court shall dismiss the criminal charge or charges."  (*Id.*, subd. (f)(3).)  Finally, courts located in the county participate in a multidisciplinary team that meets "periodically to review and discuss the implementation, practices, and impact of the program."  (*Id.*, subd. (m)(2).)

**B. *Analysis***

Armstrong asserts section 1000.7 should be interpreted as granting the trial court, not the probation department, the authority to determine who will be granted or denied deferred entry of judgment.  He argues that under the trial court's reading of the statute, the court had no authority to countermand the probation department's determination that the subdivision (b) criteria were not satisfied, and that this interpretation of the statute violates the separation of powers doctrine.  He further contends that even if the probation department is lawfully granted the authority to determine who may or may not participate in deferred

6

entry of judgment, the trial court abused its discretion by accepting the probation department's denial of deferred entry of judgment solely based on his county of residence.

The probation department argues the trial court correctly determined that section 1000.7 assigns the probation department responsibility for determining if subdivision (b) criteria are met, and granting the probation department this authority does not violate the separation of powers doctrine. The probation department further contends it acted within its discretion in denying deferred entry of judgment to Armstrong because he did not reside in Santa Clara County. We address each argument in turn.

### 1. *The plain language of section 1000.7 states that the probation department determines whether the subdivision (b) criteria are met.*

We first conclude the plain language of section 1000.7 grants the probation department, not the court, the authority to determine who meets the statutory criteria for participation in the section 1000.7 deferred entry of judgment program. "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." (*People v. Watson* (2007) 42 Cal.4th 822, 828.) "The plain meaning controls if there is no ambiguity in the statutory language." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

Subdivision (b) states a defendant may participate in a pilot program if the person is charged with committing a felony offense, if the person pleads guilty, and if "the probation department determines" the defendant meets all six listed criteria. Similarly, subdivision (f)(1) states "[i]f the probation department determines that the defendant is ineligible for the deferred entry of judgment pilot program" or if the defendant does not consent to participating, then criminal proceedings continue. The plain language of the statute provides that the probation department is charged with determining if the subdivision (b) criteria are met, including whether the defendant is suitable for the program

7

after evaluation using a risk assessment tool and whether the defendant shows the ability to benefit from services.

The trial court's authority under section 1000.7 is limited. If the probation department determines the defendant meets the subdivision (b) criteria, the court "shall grant deferred entry of judgment" if the defendant consents to participate, waives the right to a speedy trial or a speedy preliminary hearing, pleads guilty, and waives time for the pronouncement of judgment. (*Id.*, subd. (e).) No language in the statute grants the trial court any role in determining whether the subdivision (b) criteria are satisfied.

Section 1000.7's division of responsibility stands in contrast to other statutes providing for alternate disposition of criminal charges, demonstrating the Legislature's delegation of authority to the probation department here was purposeful. Welfare and Institutions Code section 790 provides for deferred entry of judgment for juveniles. That statute states that after the prosecuting attorney makes a preliminary eligibility determination, the juvenile court "may grant deferred entry of judgment" and at a hearing "shall make findings on the record that a minor is appropriate for deferred entry of judgment" if deferred entry of judgment is granted. (*Id.*, subd. (b).) Section 1001.36, providing for pretrial diversion of individuals with mental disorders, states "the court may, in its discretion, and after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant" if the defendant satisfies certain eligibility requirements and if "the court determines that the defendant is suitable for that diversion" using listed factors. (*Id.*, subd. (a).) Section 1000.2 (pretrial diversion for narcotics and drug abuse cases) states: "The court shall hold a hearing and, after consideration of any information relevant to its decision, shall determine if the defendant consents to further proceedings under this chapter and if the defendant should be granted pretrial diversion." (*Id.*, subd. (a).)

The Legislature knows how to grant decision making authority to the trial court concerning alternate disposition paths. Because section 1000.7 grants no such authority to the trial court, the Legislature plainly intended for the probation department to possess this

8

authority. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.)

Armstrong argues section 1000.7 does not unambiguously assign decision making authority to the probation department, contending section 1000.7 ascribes the trial court certain roles including ultimately granting deferred entry of judgment. But the process of granting deferred entry to judgment to the defendant is not contingent on the exercise of discretion by the court. Rather, it is the defendant who must consent to participate in the program, waive the right to a speedy preliminary hearing or trial, enter a guilty plea, and waive the otherwise applicable statutory mandates for timely entry of judgment. Upon the probation department's determination that deferred entry of judgment is appropriate for the defendant, and the defendant's completion of these acts, the trial court has no discretion to deny access to the program: the court "*shall* grant deferred entry of judgment." (§ 1000.7, subd. (e), italics added). Only if the probation department moves for entry of judgment on the purported failure of the defendant in the program does the court exercise discretion: "the court shall hold a hearing to determine *whether* judgment should be entered." (*Id.*, subd. (f)(2), italics added.) The court's function thereafter is to ensure that, if it agrees the defendant failed in the deferred entry of judgment program or is not benefitting from it, the criminal case can proceed again to judgment without a challenge to its timeliness.

For these reasons, we conclude that section 1000.7 unambiguously grants the probation department, not the trial court, the authority to determine if a defendant meets the subdivision (b) criteria for deferred entry of judgment.

### 2. *Section 1000.7 does not violate the separation of powers doctrine.*

a. Separation of powers principles.

Article III, section 3 of the California Constitution sets forth the legislative, executive, and judicial powers of state government and declares: "Persons charged with the

exercise of one power may not exercise either of the others except as permitted by this Constitution."

"The California Constitution creates a system of government in which power is divided among three coequal branches—the legislature [citation], the executive [citation], and the judiciary [citation]. [Citation.] The constitution vests each branch with essential or core functions: The separation of powers doctrine holds that one branch of government may not exercise an essential or core function belonging to another branch. [Citation.] The purpose of the doctrine is to prevent a single person or group from holding all fundamental powers of government [citation]. The dividing lines among branches is not sharp, and the branches are somewhat interdependent on each other. [Citations.]" (*People v. Marquez* (2020) 56 Cal.App.5th 40, 49.)

The separation of powers doctrine " ' "does not mean that the three departments of our government are not in many respects mutually dependent." ' [Citations.]" (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 117.) Instead, "each department of government 'for its own existence must in some degree exercise some of the functions of the others.' [Citation.]" (*Ibid.*) "The purpose of the doctrine is to prevent one branch of government from exercising the *complete* power constitutionally vested in another [citation]; it is not intended to prohibit one branch from taking action properly within its sphere that has the *incidental* effect of duplicating a function or procedure delegated to another branch. [Citation.]" (*Ibid.*) "The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch." (*Carmel Valley Fire Protection Dist. v. State of California* (2001) 25 Cal.4th 287, 297 (*Carmel Valley*).) "The doctrine, however, recognizes that the three branches of government are interdependent, and it permits actions of one branch that may 'significantly affect those of another branch.' [Citation.]" (*Id.* at p. 298.)

b. <u>Application.</u>

We conclude section 1000.7 does not violate the separation of powers doctrine by allowing the probation department to decide if a defendant meets the section 1000.7, subdivision (b) deferred entry of judgment criteria.

No case law exists interpreting section 1000.7, or examining whether the statute violates the separation of powers doctrine. However, the California Supreme Court has applied the separation of powers doctrine to statutes that purported to give prosecutors veto power over disposition decisions by the superior court. Those decisions are instructive here.

In three cases involving prosecutorial vetoes, the California Supreme Court has recognized that charging is a traditional executive function and that determining eligibility for diversion programs falls within this function. In *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 69, the court upheld a statute granting prosecutors "the authority to approve or disapprove a local diversion program" against a separation of powers challenge. Our Supreme Court recognized "a prosecutor's inherent executive authority includes not only the power to authorize diversion on a case-by-case basis, but extends also to the establishment or approval of general eligibility standards to guide the exercise of such discretion by all deputies under his direction." (*Id.* at p. 77.) In *Sledge v. Superior Court* (1974) 11 Cal.3d 70, 72 (*Sledge*), the Supreme Court held that a statute authorizing prosecutors to make a preliminary determination of eligibility for diversion did not violate the separation of powers doctrine. The court concluded that a district attorney's determination of eligibility under the statute "is not a judicial act." (*Id.* at p. 73.) And in *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 545 (*Manduley*), our Supreme Court held a statute did not violate the separation of powers doctrine by broadening the circumstances in which a district attorney could file charges against minors 14 years old or older directly in criminal court rather than in juvenile court. The court held that "a prosecutor's decision to file charges against a minor in criminal court pursuant to [the statute] is well within established charging authority of the executive branch." (*Ibid.*)

11

Similarly here, the Legislature assigned responsibility for determining whether section 1000.7, subdivision (b) criteria are met to the probation department as an executive function. The probation department as a member of the executive branch did not "arrogate to itself the core functions of another branch." (*Carmel Valley*, *supra*, 25 Cal.4th at p. 297.) Instead, the Legislature reasonably determined the probation department was best positioned to determine if the section 1000.7 criteria are met, including whether the defendant shows the ability to benefit from services generally reserved for delinquents. We discern no separation of powers violation in the Legislature's assignment of that function to the probation department, even if this action " 'significantly affect[s] those of' " the judiciary. (*Carmel Valley*, *supra*, at p. 298.)

We distinguish the Legislature's drafting of section 1000.7 from that in *People v. Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 68, where the California Supreme Court concluded a statute violated the separation of powers doctrine by requiring the prosecutor's consent before a trial court could order drug treatment diversion. The Supreme Court cited the statute's requirements that the court consider a probation report and other information, stating: "This statutory language clearly contemplates that the court may take evidence, hear argument, and find the operative facts. These are judicial acts." (*Id.* at p. 66.) The court observed that under the statute at issue, "the district attorney may screen for eligibility, the probation department may investigate the facts, but it is the court which makes the decision." (*Id.* at p. 67.) Here, section 1000.7 does not vest the trial court with the authority to weigh relevant facts and "to make a *decision*" granting or denying deferred entry of judgment. (*On Tai Ho*, *supra*, 11 Cal.3d at p. 62.) Rather, the decision whether a defendant meets the statutory criteria for deferred entry of judgment is expressly reserved to the probation department as an executive function based on its administrative expertise. (See *In re Application of Lee* (1918) 177 Cal. 690, 691-695 [upholding against separation of powers challenge the role of a prison authority in determining the release date of persons receiving indeterminate sentences because "[t]he actual carrying out of the sentence and the

12

application of the various provisions for ameliorating the same are administrative in character and properly exercised by an administrative body"].)

The probation department's decision whether the statutory criteria for deferred entry of judgment are met is also not devoid of a reviewable standard or process, further demonstrating a separation of powers violation has not occurred. The superior court must be consulted to develop the evaluation process using a risk assessment tool to determine suitability for the deferred entry of judgment program. (§ 1000.7, subds. (b)(2), (c).) The county is also required to establish a multidisciplinary team to meet periodically to review and discuss the implementation, practice, and impact of the program. (*Id.*, subd. (m)(2).) "Courts located in the county" are members of this team and thus can provide input on the probation department's application of the subdivision (b) criteria. (*Id.*, subd. (m)(2)(E).) The probation department is required to undergo other reviews to determine program effectiveness and compliance with statutory requirements. (*Id.*, subds. (i), (k), (l), (n).)

In addition, judicial review is available for a probation department's determination that the section 1000.7, subdivision (b) criteria are not met in the individual defendant's case. Following conviction, a defendant can assert the probation department abused its discretion in denying deferred entry of judgment. (See *In re Damian M.* (2010) 185 Cal.App.4th 1, 5; *In re Sergio R.* (2003) 106 Cal.App.4th 597, 607.) A defendant denied deferred entry of judgment can challenge the determination in a writ petition, as Armstrong has done here. In addition, a defendant who believes the probation department is using constitutionally impermissible criteria may potentially obtain judicial review through a due process challenge. (See *In re Rosenkrantz* (2002) 29 Cal.4th 616, 664 [Governor's review of parole decision "gives rise to a liberty interest protected by due process of law and because due process of law requires that a decision considering such factors be supported by some evidence in the record, the Governor's decision is subject to judicial review to ensure compliance with this constitutional mandate"].)

13

Additionally, while the trial court has no statutory authority to override a probation department's determination that subdivision (b) criteria are not met, the probation department here explained its rationale in a letter to the trial court, and nothing in the statute would prohibit a trial court from inquiring further into the reasons behind a probation department's determination. Section 1000.7 does not grant the probation department "unreviewable" discretion that may "be exercised in a totally arbitrary fashion both in individual cases and by the adoption of countywide policies . . . ." (*People v. Tenorio* (1970) 3 Cal.3d 89, 95.) Instead, the probation department's decision is "subject to judicial review at the proper time." (*Sledge*, *supra*, 11 Cal.3d at p. 75.)

Practical considerations support the Legislature's determination that this decision belongs to the probation department as an executive function. As the probation department's letter to the trial court noted, a process exists to transfer probation cases between counties.[5] No such process exists for deferred entry of judgment under section 1000.7, as pilot programs are authorized in only three counties. The Legislature's choice to grant decisionmaking authority to the probation department recognizes the reality that deferred entry of judgment services are county-specific, the county probation department is best able to determine whether services in that specific county can benefit the defendant, and no transfer process exists.

In addition, information relevant to the probation department's decision whether a defendant can benefit from available deferred entry of judgment program services is in the possession of the probation department. (See *Manduley*, *supra*, 27 Cal.4th at p. 545 [no separation of powers violation in part because "information relevant to the prosecutor's

---

[5] See section 1203.9, subdivision (a)(1): Except as otherwise provided, "whenever a person is released on probation or mandatory supervision, the court, upon noticed motion, shall transfer the case to the superior court in any other county in which the person resides permanently with the stated intention to remain for the duration of probation or mandatory supervision, unless the transferring court determines that the transfer would be inappropriate and states its reasons on the record."

14

decision, such as the minor's prior criminal history and evidence of the minor's current criminal conduct, is within the possession of the prosecutor"]; *Sledge*, *supra*, 11 Cal.3d at pp. 73-74 [no separation of powers violation in granting the prosecutor the authority to make a preliminary diversion eligibility decision because the prosecutor—not the trial court—possessed the information needed to determine whether the eligibility criteria were satisfied].) Separation of powers principles do not bar the Legislature from concluding that the probation department—rather than the court—is best able to determine whether out-of-county residents, as a class, can benefit from program services based on considerations such as past experiences of similar defendants, departmental resources, and available resources in other counties.

We acknowledge that the separation of powers doctrine applies to the probation department as a member of the executive branch. For example, "courts may not delegate the exercise of their discretion to probation officers." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372.) In felony probation proceedings, "courts have disapproved provisions purporting to completely delegate the setting of a condition to the probation department." (*In re D.N.* (2022) 14 Cal.5th 202, 209, fn. 4.) Thus, in *People v. Cruz* (2011) 197 Cal.App.4th 1306, 1311, the Court of Appeal held that "[t]o the extent section 1210.12 purports to deprive the trial court of the authority to decide who should be subject to GPS monitoring, it violates the separation of powers."

However, under section 1000.7, the trial court does not unconstitutionally delegate its existing discretionary authority to impose a particular probation condition to the probation department; rather, the Legislature has assigned the authority to determine program eligibility to the probation department. Neither is the Legislature's grant of decisionmaking authority to the probation department equivalent to a grant of veto authority to a prosecutor. While probation officers are executive branch employees (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127), "in serving the court, the probation department must remain independent of prosecuting authorities." (*County of Placer v. Superior Court* (2005)

15

130 Cal.App.3d 807, 814.)  Probation officers "fulfill quasi-judicial functions ' "intimately related to the judicial process." ' [Citations.]" (*Holt v. Brock* (2022) 85 Cal.App.5th 611, 622-623.)  To the extent those prosecutorial veto cases found a separation of powers violation because of the concern that an advocate was usurping a judicial function, that concern is not present here.

The separation of powers doctrine "has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another." (*Parker v. Riley* (1941) 18 Cal.2d 83, 90.)  Instead, "the separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch." (*In re Rosenkrantz*, *supra*, 29 Cal.4th at p. 662.)  "Under the separation of powers doctrine, courts may not encroach on matters normally left to the Legislature, and we are mindful that the policy judgments underlying the establishment of eligibility criteria for diversion are for the Legislature to make." (*Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130, 148.)  Similarly here, the Legislature—not this court—is best positioned to determine which body possesses the information and expertise necessary to determine if section 1000.7 young adult deferred entry of judgment criteria are met.

For these reasons, we conclude that section 1000.7 does not violate the separation of powers doctrine by assigning the task of determining eligibility for young adult deferred entry of judgment to the probation department.

### 3. *The trial court did not abuse its discretion in denying deferred entry of judgment based on the probation department's determination that Armstrong did not meet the subdivision (b) criteria.*

Finally, Armstrong contends the trial court abused its discretion by denying deferred entry of judgment solely based on the probation department's determination that cited Armstrong's county of residence.  We agree with Armstrong that abuse of discretion is the

16

appropriate standard of review. (See *In re Damian M.*, *supra*, 185 Cal.App.4th at p. 5; *In re Sergio R.*, *supra*, 106 Cal.App.4th at p. 607.) An abuse of discretion occurs if the decisionmaking body "makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

Applying this standard, we conclude no abuse of discretion occurred in the trial court's acceptance of the probation department's determination. As discussed above, section 1000.7 grants the probation department—not the trial court—the authority to determine if the criteria in subdivision (b) are met. If the probation department determines the criteria are not met, "the proceedings shall continue as in any other case." (§ 1000.7, subd. (f)(1).) Because the trial court does not decide whether the statutory criteria are met, it is not clear what discretion Armstrong asserts the trial court abused. In his reply to the return, Armstrong shifts his abuse of discretion argument from the trial court to the probation department, arguing that if section 1000.7 grants the probation department decisionmaking authority, probation abused its discretion by improperly applying the statutory criteria. We thus treat Armstrong's abuse of discretion argument as directed toward the probation department's determination.

The record demonstrates that the probation department did not act arbitrarily or capriciously in determining Armstrong could not benefit from services (§ 1007, subd. (b)(3)) because he lives outside Santa Clara County. Section 1000.7 authorizes a deferred entry of judgment pilot program in only three counties. Armstrong's Alameda County residence is not one of these counties. Armstrong argues he could benefit from deferred entry of judgment program services in Santa Clara County because he resides closer to the probation department than some Santa Clara County residents, because the probation department is not likely to need to travel to his home, because he is willing to drive to the probation department for any needed services, and because at least one out-of-

17

county resident has successfully completed the Santa Clara County deferred entry of judgment program.

However, the probation department has provided a declaration from the department's Deputy Chief Probation Officer for the Adult Services Division. The department explains that while it previously included participants who resided out of county, it altered this approach in part because some out-of-county participants "struggled to successfully complete the program and/or to obtain services." The declaration outlines issues experienced with out-of-county clients, and states that developments such as a change in its contracted service provider and a shift away from remotely provided services have impacted its ability to serve out-of-county residents. The declaration also rebuts Armstrong's claim that field visits are rare, stating that such visits are required and that visiting out-of-county sites is difficult because probation officers are not informed about out-of-county trends, neighborhoods, and gang-related intelligence and do not have access to other counties' communications systems to request assistance from first responders. The probation department's rationale outlined in the declaration does not suggest an arbitrary or capricious decision. Moreover, neither Armstrong's counsel nor the trial court made any attempt to question the probation department further about its rationale, and both expressed that they challenged the authority granted to the department under the language of section 1000.7, not the probation department's application of the statutory criteria in this scenario.

Armstrong argues that in addition to finding he did not show the ability to benefit from services under section 1000.7, subdivision (b)(3), the probation department also determined he was not suitable for the program under subdivision (b)(2) and did so without the benefit of a risk assessment tool as required by this subdivision. The probation department's letter to the trial court stated Armstrong "was found unsuitable" for deferred entry of judgment. However, the department appears to have used the term "unsuitable" to refer to both the second and third criteria under subdivision (b), as the department's letter later stated that Armstrong "is unsuitable for [deferred entry of judgment] based on his

18

inability to benefit from supervision services . . . or be seen to standard, due to his residency."

Section 1000.7, subdivision (b) states a defendant may participate in a deferred entry of judgment program only if the probation department determines "all" of the subdivision (b) criteria are met. Because the probation department did not abuse its discretion in determining that Armstrong did not show the ability to benefit from services, any error it made in finding Armstrong unsuitable under subdivision (b)(2) without the benefit of a risk assessment tool does not affect the validity of its determination.

### III. DISPOSITION

The petition for writ of mandate, prohibition, or alternative relief is denied.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.


_____
Bromberg, J.


H053298 Armstrong v. Superior Court

Trial Court:                                          Santa Clara County Superior Court
                                                     Superior Court Nos.: C2409748,
                                                     C2416888

Trial Judge:                                         The Honorable David A. Cena

Attorney for Petitioner
Chase Aaron Armstrong:                               Damon Silver,
                                                     Acting Public Defender

                                                     Ethan Weiss,
                                                     Deputy Public Defender

                                                     Rebecca Kahan,
                                                     Deputy Public Defender


Attorneys for Real Parties in Interest
The People:                                          Jeffrey Rosen,
                                                     District Attorney

                                                     Alexandra Gadeberg,
                                                     Supervising Deputy District Attorney

                                                     Vishal Nandkumar Bathija,
                                                     Deputy District Attorney


Attorneys for Real Parties in Interest
County of Santa Clara Probation Department:  Tony Lopresti,
                                                     County Counsel

                                                     Kavita Narayan,
                                                     Chief Assistant County Counsel

                                                     Susan P. Greenberg,
                                                     Deputy County Counsel

H053298 Armstrong v. Superior Court